# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 29, 2012 Session

## STATE OF TENNESSEE v. OSCAR E. OCHOA and BEATRIZ OCHOA

### Direct Appeal from the Criminal Court for Bradley County
#### No. M-10-053 & -054    Amy Reedy, Judge

---

### No. E2011-01572-CCA-R9-CD - Filed October 2, 2012

---

Defendants, Oscar E. Ochoa and Beatriz Ochoa, were indicted by the Bradley County Grand Jury for possession of between 10 and 70 pounds of marijuana with intent to sell. Defendants filed applications for Rule 9 interlocutory appeal seeking our review of the trial court's ruling that the State did not abuse its discretion when the Assistant District Attorney General denied Defendants' applications for pretrial diversion. Defendants' cases were consolidated on appeal. After a thorough review of the record and relevant authorities, we conclude that the trial court properly affirmed the State's denial of pretrial diversion. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JERRY L. SMITH and ROGER A. PAGE, JJ., joined.

Andrew M. Freiburg, Cleveland, Tennessee (on appeal), and G. Scott Kanavos, Cleveland, Tennessee (at trial), for appellant, Oscar E. Ochoa. Matthew C. Rogers, Athens, Tennessee, for the appellant, Beatriz Ochoa.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Robert Steven Bebb, District Attorney General; and Dallas Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts*

The underlying facts of the case, as summarized from the affidavit of the arresting officer, are as follows. On the afternoon of November 2, 2009, Drug Task Force Agent Toby

Gregory was observing traffic on I-75 in Bradley County. He saw a white Mitsubishi with Florida registration traveling north. He noticed that the driver of the vehicle "appeared to be attempting to hide behind the B post in the vehicle" and that the driver's arm appeared to be straight and rigid and he appeared to be nervous. Agent Gregory followed the vehicle. He observed the vehicle driving approximately one car length behind an 18-wheeler in the right lane of traffic for approximately one mile. He watched as the vehicle attempted to pass the 18-wheeler and approached another 18-wheeler, which the vehicle also followed at one-car length behind. He also observed the vehicle fail to maintain its lane of travel, crossing the solid yellow line.

Agent Gregory activated his emergency lights and stopped the vehicle. He approached the passenger side of the vehicle. The driver, Oscar Ochoa, provided him with a Connecticut driver's license and a rental agreement for the vehicle. Agent Gregory asked Mr. Ochoa to exit the vehicle and walk to the rear of the vehicle, where Agent Gregory explained the reasons for the stop. Mr. Ochoa apologized for the traffic violations. Agent Gregory noticed that Mr. Ochoa appeared to be nervous and was speaking rapidly. Mr. Ochoa explained that his wife, Beatriz Ochoa, the passenger, was sick. Mr. Ochoa explained that they had been visiting friends in Miami, Florida. Agent Gregory approached the passenger to check on her. Ms. Ochoa also stated that they had been in Miami, but that they had stayed with her daughter.

Another agent, Agent Smith, wrote a warning ticket while Agent Gregory asked Mr. Ochoa if there were any guns, drugs, or large amounts of cash in the vehicle, which Mr. Ochoa denied. Mr. Ochoa then gave Agent Gregory consent to search the vehicle. Inside the trunk, Agent Gregory found approximately 90 pounds of marijuana packaged in one-gallon zip lock bags placed inside vacuum sealed bags. The packages were coated in an all spice type food seasoning in an attempt to hide the odor of the marijuana. Agent Gregory advised Mr. Ochoa of his *Miranda* rights, and Mr. Ochoa denied any knowledge of the marijuana.

As stated in the State's denial of Defendants' applications for pretrial diversion, further investigation revealed that Defendants had rented the vehicle in Florida after the car they were driving broke down. Defendants had stayed in a hotel for two nights while attempting to repair their car. When it appeared that repairs would not be immediately possible, Defendants rented a car and continued on their trip.

Mr. Ochoa's application for pretrial diversion reflected that he was married to Ms. Ochoa, but they were separated, and that he had no children. Mr. Ochoa attended college in Columbia, South America, and he immigrated to the United States in 1999. He resided in

Connecticut and had worked at various dental labs since 1999. Other than speeding violations, Mr. Ochoa had no criminal history.

Ms. Ochoa's application for pretrial diversion reflected that she also attended college in Columbia and immigrated to the United States in 2000. She had been unemployed since November, 2008. She had two children, and she had no criminal history.

The State separately denied each Defendant's application for pretrial diversion; however, the reasons set forth in the denial of each Defendant's petition are much the same and are as follows. Regarding the circumstances of the offense, the State found that Defendants' actions were not impulsive or isolated in nature. The State found that Defendants had no prior criminal history disqualifying them from pretrial diversion; however, the State noted that Defendants immigrated in 1999 and 2000, and therefore found that this factor weighed neither for nor against them. The State found that Defendants did not provide any information regarding their social history or present mental and physical condition, and therefore, this factor weighed neither for nor against Defendants.

The State found that the denial of pretrial diversion in this case would provide a strong deterrent effect on future criminal activity, both for Defendants and for the surrounding community. The State weighed this factor against granting pretrial diversion, in part because of the State's interest in protecting both society and Defendants from trafficking large amounts of illegal drugs, and in part because of the sustained intent of Defendants to violate the law. The State also found that the circumstances of the crime showed a sustained intent to violate the law, and that Defendants' amenability to correction was a factor that weighed against them. The State found that pretrial diversion would not serve the ends of justice and the interests of the public and Defendants. The State noted that Defendants' actions were calculated and showed a sustained intent to violate the law and that but for the actions of law enforcement, almost 50 pounds of marijuana would have reached the streets. The State also found that the public interest would not be served by granting pretrial diversion because it would diminish the seriousness of trafficking illegal drugs, and Defendants would not be served because they would believe that the crime was insignificant.

The State found that Defendants' attitudes and behavior since the arrest weighed in favor of them because they have not had anymore legal trouble. Because Defendants were separated, the State weighed this factor against them. The State gave no weight to Defendants' current drug usage, emotional stability, or general reputation because these factors were unknown. Mr. Ochoa's employment history was favorable to granting pretrial diversion, but Ms. Ochoa's was not because she had been unemployed. Mr. Ochoa's family responsibility weighed against him because he was responsible for only himself; and the

-3-

State weighed this factor in favor of Ms. Ochoa because she had one child living in her home.

Finally, the State found that law enforcement was opposed to granting pretrial diversion and weighed this factor heavily against Defendants. The State found as follows:

> After carefully considering and weighing all the above factors, the State has concluded that the interests of justice and the interests of the public far outweigh the interests of the Defendant[s]. The Defendant[s] *knew* that [their] conduct was illegal but continued in it until stopped by law enforcement. For the forgoing reasons, the State, having completely and fully considered the Defendant[s'] application[s] for Pretrial Diversion, hereby denies [their] applications pursuant to the laws of the State of Tennessee.

Defendants filed a writ of certiorari with the trial court, and the trial court affirmed the State's decision, finding that the Assistant District Attorney did not abuse his discretion. Defendants appeal the trial court's ruling to this Court through an interlocutory appeal pursuant to Tennessee Rules of Appellate Procedure, Rule 9. Defendants' cases were consolidated on appeal.

*Analysis*

On appeal, Defendants argue that the State abused its discretion by failing to consider and weigh all of the relevant factors and that the record does not support the State's finding that Defendants had a sustained intent to violate the law. The State counters that there is substantial evidence in the record that supports the denial of both Defendants' applications for pretrial diversion and that the State properly considered every applicable factor, making detailed findings to support its decision.

The pretrial diversion statute permits a district attorney general to suspend prosecution of a qualified defendant for a period of up to two years. *See* Tenn. Code Ann. § 40-15-105(a)(1)(A) (2006). Before July 1, 2011, a defendant could seek pretrial diversion for an offense that was not a Class A or Class B felony, certain Class C felonies, a sexual offense, driving under the influence, or vehicular assault. *See id*. at 40-15-105(a)(1)(B)(iii) (2006 & Supp. 2011). Effective July 1, 2011, subsection (a)(1)(B) of Tennessee Code Annotated section 40-15-105 was amended to limit the availability of pretrial diversion to those in which "the charged offense for which the prosecution is being suspended is not a felony" or one of several other offenses specified therein. To qualify for pretrial diversion, the defendant must not have a disqualifying conviction or have previously been granted pretrial

diversion for another offense. *See id*. at 40-15-105(a)(1)(B)(i); *see also State v. Bell*, 69 S.W.3d 171, 176 (Tenn. 2002). The offenses in this case occurred prior to the new law taking effect, and therefore, Defendants are statutorily eligible for pretrial diversion.

Nonetheless, statutory eligibility for pretrial diversion does not entitle a defendant to diversion. *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999). Rather, the State has the sole discretion to determine whether to grant pretrial diversion to a defendant who meets the strict statutory requirements. Tenn. Code Ann. § 40-15-105(b)(3); *State v. Pinkham*, 955 S.W.2d 956, 959 (Tenn. 1997). The State must focus on the defendant's amenability to correction and consider any factors which demonstrate the defendant's propensity to become a repeat offender. *State v. Yancey*, 69 S.W.3d 553, 557 (Tenn. 2002); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). These factors include: (1) the circumstances of the offense; (2) the defendant's criminal record; (3) the defendant's social history; (4) where appropriate, the defendant's physical and mental condition; (5) the likelihood pretrial diversion will serve the ends of justice; and (6) the best interest of both the public and the defendant. *Hammersley*, 650 S.W.2d at 355. The State may also consider the need for general deterrence. *State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007).

If pretrial diversion is denied, the denial must be in writing, listing and discussing the various factors considered and the weight attributed to each factor. *Curry*, 988 S.W.2d at 157. Failure to consider and articulate relevant factors will constitute an abuse of discretion. *State v. Bell*, 69 S.W.3d 171, 178 (Tenn. 2002). Additionally, a district attorney general must avoid relying upon irrelevant factors when denying diversion. *Id*.

A defendant may appeal to the trial court for a writ of certiorari, if an application for pretrial diversion is denied, to determine whether the prosecution abused its prosecutorial discretion. Tenn. Code Ann. § 40-15-105(b)(3). In reviewing the prosecutor's decision, the trial court must view the decision of the prosecutor as "presumptively correct and it should only be set aside on the basis of patent or gross abuse of prosecutorial discretion." *State v. Watkins*, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980). The discretion to grant or deny pretrial diversion rests with the prosecution rather than the trial court. *Bell*, 69 S.W.3d at 179. The trial court must consider only the evidence considered by the prosecution and conduct a hearing only to resolve factual disputes concerning the application. *Curry*, 988 S.W.2d at 157-58. The trial court may not reweigh the evidence or substitute its view for that of the prosecutor. *Bell*, 69 S.W.3d at 179. Before the trial judge can find an abuse of discretion, the record must show an absence of any substantial evidence to support the refusal of the prosecution to enter into a memorandum of understanding. *Watkins*, 607 S.W.2d at 488.

If the trial court does not find an abuse of discretion and affirms the prosecutor's denial of the application for pretrial diversion, the defendant may then seek an interlocutory appeal. Tenn. R. App. P. 9. On appeal, this Court must determine whether the trial court's decision is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

Both Defendants argue that the State failed to consider Defendants' amenability to correction and that there is no proof of Defendants' sustained intent to violate the law. A defendant's amenability to correction is the proper focus for a district attorney in granting or denying pretrial diversion. *See Curry*, 988 S.W.2d at 157; *Hammersley*, 650 S.W.2d at 355. In our view, the State properly considered Defendants' amenability to correction and concluded that the circumstances of the offense indicate a sustained intent to violate the law. Specifically, the circumstances of the offenses, as outlined in the State's written denial, show that Defendants were found in possession of a large quantity of drugs, packaged in such a manner as to avoid detection and indicative of drug trafficking. The State contends that the circumstances of the offense indicate that Defendants' actions were "part of a sophisticated and organized interstate drug smuggling operation." We conclude that the facts and inferences support the State's conclusion that Defendants' actions were not impulsive or isolated. Because the State properly exercised its discretion as to this factor, Defendants are not entitled to relief on this issue.

Both Defendants contend that the State failed to properly consider their lack of criminal records and favorable social histories. In the written denial, the State acknowledged both Defendants' lack of criminal history, but found that this factors weighed neither in favor nor against Defendants because they both immigrated to the United States as adults. The State could not assume that Defendants also had no criminal history in their home country. Therefore, the State appropriately gave no weight to this factor.

Mr. Ochoa asserts that the State failed to properly consider that he has had no legal trouble since the incident and weigh that factor in his favor; however, this is incorrect. The State's denial clearly states that this factor weighed in favor of both Defendants. Mr. Ochoa also asserts that the State failed to consider that he "is a college educated, tax paying member of society with a strong reputation in the community as evidenced in his application for pretrial diversion." In fact, the State considered that Defendant had been steadily employed and weighed that factor in his favor.

Ms. Ochoa asserts that the State assigned no weight to her lack of drug use. She also asserts that the State should have favorably weighed her emotional stability; however, she acknowledges in her brief that there was no evidence regarding her emotional stability or instability. Therefore, the State correctly assigned no weight to this factor because it was unknown, as Ms. Ochoa did not include any evidence of it in her application for pretrial

diversion. There was also no evidence of Ms. Ochoa's drug use or lack thereof in her application; therefore, the State assigned no weight, positive or negative, to that factor.

Similarly, the State assigned no weight, positive or negative, to Mr. Ochoa's "general reputation," finding that it was unknown. Mr. Ochoa asserts that the State failed to consider his multiple letters of recommendation in support of his good reputation. In its brief, the State notes that Mr. Ochoa did not include those reference letters in the record; however, we observe that the State must have overlooked them because they are clearly contained in Mr. Ochoa's Rule 9 application as exhibits. Nevertheless, the State could not have considered these letters in denying diversion because all of the letters were written after Mr. Ochoa's application was submitted and denied. The letters are dated in March, 2011; Mr. Ochoa's application for pretrial diversion was signed by him on May 27, 2010; and the State's response denying pretrial diversion was filed on September 20, 2010. It is not clear whether the letters were presented to the trial court at the June 20, 2011 hearing. Regardless, the trial court must consider only the evidence considered by the prosecution in determining whether the State abused its discretion. The State did not abuse its discretion in finding that Mr. Ochoa's general reputation was unknown.

Ms. Ochoa contends that the State failed to show any criminal actions specifically attributable to her. However, we conclude that the evidence supports the inference that Ms. Ochoa had knowledge of the crime. She was traveling across state lines with her husband, from whom she was separated, in a rental car in which a large quantity of drugs were found. As the State points out in its brief, it is a reasonable inference that Ms. Ochoa would have learned of the contents of the trunk when the couple switched out vehicles and that she would have continued in their journey without awaiting their vehicle's repair in the interest of making a scheduled delivery of the drugs. We conclude that the State did not abuse its discretion in attributing criminal actions to Ms. Ochoa.

Defendants contend that the State improperly weighed their marital status against them. Marital stability and home environment are two of the factors set forth in *State v. Washington* for consideration in determining whether to grant or deny pretrial diversion. 866 S.W.2d 950, 951 (Tenn. 1993). The State asserts that in this case, the circumstances of the offense, that Defendants were traveling together while separated might have been an effort by Defendants to cover their crime, "mak[ing] their trip look more like a benign and innocent family vacation to the eyes of law enforcement, if stopped." Regardless of whether we believe that is a fair inference, Defendants have offered no evidence in support of their marital stability. In fact, one of the many reference letters provided by Defendant was written by a woman with whom he had been in a "personal relationship" since prior to the date on which Mr. Ochoa submitted his application for pretrial diversion, which was on May 27, 2010, while Defendants were married but separated. On March 2, 2011, Sonia Taveras

wrote, "Maybe my opinion of him can sound bias as for the past year I am in a personal relationship with [Mr. Ochoa] . . . . He treats my children as if they were his own, and not as if he were [sic] a step father." Furthermore, although it is not specifically stated in the State's denial, we believe that the weight assigned to this factor was minimal. The written denial lists factors 1 through 8 that were considered, and number seven includes eight subheadings ("a" through "h") for Defendants' attitude and behavior since arrest; home environment; current drug usage; emotional stability; past employment; general reputation; marital stability; and family responsibility. The way in which the factors are categorized suggests that the sub-factors do not carry as much weight as the factors individually enumerated.

Mr. Ochoa asserts that the State's denial did not explain why unfavorable factors outweighed favorable factors. We disagree. The State's written denial addresses each of the relevant factors and assigns weight either in favor of or against diversion, or gives a factor no weight. The State clearly relied heavily upon the circumstances of the offense, the need to create a deterrent effect and not diminish the seriousness of the offense, and the opposition of law enforcement to pretrial diversion.

Finally, Mr. Ochoa asserts that the statement by the State in its written denial that "diversion is an extraordinary relief whose use must be used sparingly" is contrary to legislative intent. This assertion is incorrect. This Court has long recognized that pretrial diversion is "extraordinary relief, and prosecutors must scrutinize each applicant carefully." *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993).

Despite the numerous reference letters written on behalf of Mr. Ochoa; the lack of criminal histories for both Defendants; Defendants' attitude and behavior since the arrest; and the stable employment history of Mr. Ochoa, all of which weighed in favor of pretrial diversion, we conclude that the evidence supports the trial court's decision to deny diversion. Defendants are not entitled to relief.

## CONCLUSION

On review, we conclude that the trial court's determination that the Assistant District Attorney General did not abuse his discretion when he denied the Defendants pretrial diversion was supported by a preponderance of the evidence. For the reasons stated above, we affirm the trial court's judgment.

_____
THOMAS T. WOODALL, JUDGE